MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
CARMELO CABALLERO DE LA CRUZ,
ARNULFO VAZQUEZ BASURTO, OMAR
ESPINOBARROS VAZQUEZ, and
RAYMUNDO VAZQUEZ ANGEL,
*individually and on behalf of others similarly*
*situated,*

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**
**ECF Case**

*Plaintiffs*,

-against-

PASTRAMI PRINCE INC. (D/B/A
PASTRAMI QUEEN), PASTRAMI
LEASEHOLD LLC (D/B/A PASTRAMI
QUEEN), 1125 KOSHER DELI CORP
(D/B/A PASTRAMI QUEEN), STEVEN
FRIEDMAN, BARRY FRIEDMAN, ALLAN
PHILLIPS, DAVID DOE , THIERNO SISSE ,
JOHN PHILLIPS, and JACK DOE ,

*Defendants.*
-------------------------------------------------------X

Plaintiffs Carmelo Caballero de la Cruz, Arnulfo Vazquez Basurto, Omar Espinobarros

Vazquez, and Raymundo  Vazquez Angel  , individually and on behalf of others similarly situated

(collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C.,

upon their knowledge and belief, and as against Pastrami Prince Inc. (d/b/a Pastrami Queen),

Pastrami Leasehold LLC (d/b/a Pastrami Queen), 1125 Kosher Deli Corp (D/B/A Pastrami

Queen), ("Defendant Corporations"), Steven Friedman,  Barry Friedman,  Allan Phillips,  David

Doe, Thierno Sisse , John Phillips, and Jack Doe, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.       Plaintiffs are former employees of Defendants Pastrami Prince Inc. (d/b/a Pastrami Queen), Pastrami Leasehold LLC (d/b/a Pastrami Queen), 1125 Kosher Deli Corp (D/B/A Pastrami Queen), Steven Friedman, Barry Friedman, ALLAN Phillips, David Doe, Thierno Sisse , John Phillips, and Jack Doe.

2.       Defendants own, operate, or control a Kosher deli, located at 1125 Lexington Avenue, New York, NY, 10075 under the name "Pastrami Queen".

3.       Upon information and belief, individual Defendants Steven Friedman, Barry Friedman, Allan Phillips, David Doe, Thierno Sisse, John Phillips, and Jack Doe, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the delis as a joint or unified enterprise.

4.       Plaintiffs were employed as dishwasher, food preparer, and ostensibly as delivery workers at the deli located at 1125 Lexington Avenue, New York, NY, 10075.

5.       Plaintiffs Caballero, Vazquez and Angel were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to washing dishes, mopping floors, vacuuming the carpet, cleaning the counters preparing food, carrying soup, potatoes and meat from the basement to the kitchen , washing the restaurant windows and floor mats , taking out the trash, cleaning the top stove of the kitchen, peeling potatoes and onions, preparing sauces, prepacking pickles for deliveries, restocking incoming inventory, cutting vegetables, cleaning the tank where grease would sit , setting up traps for mice, killing the cockroaches,

filling in the rat holes, cleaning the basement and the entire restaurant, mopping and preparing tools to be used during construction (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint Plaintiffs worked for Defendants in excess of 40 hours per week without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.      Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

10.     Defendants employed and accounted for Plaintiffs Caballero, Vazquez and Angel as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

11.     Regardless, at all relevant times, Defendants paid these Plaintiffs at a rate that was lower than the required tip-credit rate.

12.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because these Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

13.     Upon information and belief, Defendants employed the policy and practice of disguising these Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs Caballero, Vazquez and Angel at the minimum wage rate and enabled them to pay them at the tip-credit rate

(which they still failed to do).

14.     In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

15.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

16.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

17.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq*. (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

18.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

19.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

20.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a Kosher deli located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

21.    Plaintiff Carmelo Caballero de la Cruz ("Plaintiff Caballero" or "Mr. Caballero") is an adult individual residing in New York County, New York.

22.    Plaintiff Caballero was employed by Defendants at Pastrami Queen from approximately April 14, 2014 until on or about January 25, 2019.

23.    Plaintiff Arnulfo Vazquez Basurto ("Plaintiff Vazquez" or "Mr. Vazquez") is an adult individual residing in Bronx County, New York.

24.    Plaintiff Vazquez was employed by Defendants at Pastrami Queen from approximately June 22, 2016 until on or about January 26, 2020.

25.    Plaintiff Omar Espinobarros Vazquez ("Plaintiff Espinobarros" or "Mr. Espinobarros") is an adult individual residing in New York County, New York.

26.    Plaintiff Espinobarros was employed by Defendants at Pastrami Queen from approximately January 2019 until on or about January 30, 2020.

27.     Plaintiff Raymundo Vazquez Angel ("Plaintiff Angel " or "Mr. Angel") is an adult individual residing in Bronx County, New York.

28.     Plaintiff Angel was employed by Defendants at Pastrami Queen from approximately August 12, 2017 until on or about March 16, 2020.

*Defendants*

29.     At all relevant times, Defendants owned, operated, or controlled a Kosher deli, located at 1125 Lexington Avenue, New York, NY, 10075 under the name "Pastrami Queen".

30.     Upon information and belief, Pastrami Prince Inc. (d/b/a Pastrami Queen) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1125 Lexington Avenue, New York, NY, 10075.

31.     Upon information and belief, Pastrami Leasehold LLC (d/b/a Pastrami Queen) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 470 Herrington Drive, Austerlitz, New York, 12017.

32.     Upon information and belief, 1125 Kosher Deli Corp (D/B/A Pastrami Queen) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1125 Lexington Ave Front 2, New York, NY, 10075.

33.     Defendant Steven Friedman is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Steven Friedman is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Steven Friedman possesses operational control over Defendant Corporations, an ownership interest

in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

34.     Defendant Barry Friedman is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Barry Friedman is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Barry Friedman possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

35.     Defendant Allan Phillips is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Allan Phillips is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Allan Phillips possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

36.     Defendant David Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant David Doe is sued individually in his capacity as a manager of Defendant Corporations. Defendant David Doe possesses operational

control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

37.     Defendant Thierno sisse is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Thierno sisse is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Thierno sisse possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

38.     Defendant John Phillips is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant John Phillips is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant John Phillips possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

39.     Defendant Jack Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Jack Doe is sued individually in his capacity as a manager of Defendant Corporations. Defendant Jack Doe possesses operational control

over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

40.     Defendants operate a Kosher deli located in the Upper East Side section of Manhattan in New York City.

41.     Individual Defendants, Steven Friedman, Barry Friedman, Allan Phillips, David Doe, Thierno Sisse, John Phillips, and Jack Doe, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, or control significant functions of Defendant Corporations.

42.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

43.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

44.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

45.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

46.     Upon information and belief, Individual Defendants Steven Friedman, Barry Friedman, Allan Phillips, Thierno sisse and John Phillips operate Defendant Corporations as either alter egos of themselves and/or failed to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

b)  defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between all Defendants,

d)  operating Defendant Corporations for their own benefit as the sole or majority shareholders,

e)  operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

f)  intermingling assets and debts of their own with Defendant Corporations,

g)  diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

h)  Other actions evincing a failure to adhere to the corporate form.

47.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

48.     In each year from 2014 to 2020, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

49.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the delis on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

50.     Plaintiffs are former employees of Defendants who were employed as dishwashers, food preparers and ostensibly as delivery workers. However, the delivery workers spent more than 20% of each shift performing the non-tipped duties described above.

51.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Carmelo Caballero de la Cruz*

52.     Plaintiff Caballero was employed by Defendants from approximately April 14, 2014 until on or about January 25, 2019.

53.     Defendants ostensibly employed Plaintiff Caballero as a delivery worker.

54.     However, Plaintiff Caballero was also required to spend a significant portion of his work day performing the non-tipped duties described above.

55.     Although Plaintiff Caballero ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

56.     Plaintiff Caballero regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

57.     Plaintiff Caballero's work duties required neither discretion nor independent judgment.

58.     Throughout his employment with Defendants, Plaintiff Caballero regularly worked in excess of 40 hours per week.

59.     From approximately April 15, 2014 until on or about August 2017, Plaintiff Caballero worked from approximately 1:00 p.m. until on or about 11:00 p.m., 4 days a week and from approximately 1:00 p.m. until on or about 11:30 p.m., 2 days a week (typically 60 to 61 hours per week).

60.     From approximately August 2017 until on or about January 25, 2019, Plaintiff Caballero worked from approximately 2:00 p.m. until on or about 11:00 p.m., 4 days a week and from approximately 2:00 p.m. until on or about 11:30 p.m., 2 days a week (typically 54 to 55 hours per week).

61.     From approximately April 2014 until on or about January 10, 2019, Defendants paid Plaintiff Caballero his wages in cash.

62.     From approximately January 11, 2019 until on or about January 25, 2019, Defendants paid Plaintiff Caballero his wages by check.

63.     From approximately April 2014 until on or about August 2017, Defendants paid Plaintiff Caballero a fixed salary of $270 per week.

64.     From approximately August 2017 until on or about January 25, 2019, Defendants paid Plaintiff Caballero a fixed salary of $360 per week.

65.     For approximately a week and two days in January 2919, Defendants did not pay Plaintiff Caballero any wages for his work.

66.     Plaintiff Caballero's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

67.     For example, Defendants required Plaintiff Caballero to work an additional 30 minutes past his scheduled departure time two days a week, and did not pay him for the additional time he worked.

68.     Defendants never granted Plaintiff Caballero any breaks or meal periods of any kind.

69.     Plaintiff Caballero was never notified by Defendants that his tips were being included as an offset for wages.

70.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Caballero's wages.

71.     Plaintiff Caballero was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

72.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Caballero regarding overtime and wages under the FLSA and NYLL.

73.     Defendants did not provide Plaintiff Caballero an accurate statement of wages, as required by NYLL 195(3).

74.     Defendants did not give any notice to Plaintiff Caballero, in English and in Mixteco (Plaintiff Caballero's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

75.     Defendants required Plaintiff Caballero to purchase "tools of the trade" with his own funds—including one bicycle, one helmet, lights for his bicycle, bike maintenance and uniform.

*Plaintiff Arnulfo Vazquez Basurto*

76.     Plaintiff Vazquez was employed by Defendants from approximately June 22, 2016 until on or about January 26, 2020.

77.     Defendants employed Plaintiff Vazquez as a dishwasher and ostensibly as a delivery worker.

78.     However, Plaintiff Vazquez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

79.     Although Plaintiff Vazquez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

80.     Plaintiff Vazquez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

81.     Plaintiff Vazquez's work duties required neither discretion nor independent judgment.

82.     Throughout his employment with Defendants, Plaintiff Vazquez regularly worked in excess of 40 hours per week.

83.     From approximately June 22, 2016 until on or about September 2018, Plaintiff Vazquez worked from approximately 8:00 a.m. until on or about 4:30 p.m., 6 days a week (typically 51 hours per week).

84.     During the month of October 2018, Plaintiff Vazquez worked from approximately 8:00 a.m. until on or about 11:00 p.m., 6 days a week (typically 90 hours per week).

85.     From approximately November 2018 until on or about June 2019, Plaintiff Vazquez worked from approximately 8:00 a.m. until on or about 4:30 p.m., 6 days a week (typically 51 hours per week).

86.     During the month of July 2019, Plaintiff Vazquez worked from approximately 8:00 a.m. until on or about 3:30 p.m., 6 days a week (typically 45 hours per week).

87.     From approximately August 2019 until on or about January 26, 2020, Plaintiff Vazquez worked from approximately 8:00 a.m. until on or about 3:30 p.m., Tuesdays, Wednesdays, Saturdays and Sundays and from approximately 8:00 a.m. until on or about 2:30 p.m., Thursdays and Fridays (typically 43 hours per week).

88.     From approximately June 2016 until on or about December 2018, Defendants paid Plaintiff Vazquez his wages in cash.

89.     From approximately January 2019 until on or about January 2020, Defendants paid Plaintiff Vazquez his wages by check.

90.     From approximately June 2016 until on or about August 2017, Defendants paid Plaintiff Vazquez $6.00 per hour.

91.     From approximately August 2017 until on or about June 2018, Defendants paid Plaintiff Vazquez a fixed salary of $360 per week.

92.     During the month of July 2018, Defendants paid Plaintiff Vazquez a fixed salary of $40 per week.

93.     From approximately July 2018 until on or about December 2018, Defendants paid Plaintiff Vazquez a fixed salary of $360 per week.

94.     From approximately January 1, 2019 until on or about January 6, 2019, Defendants paid Plaintiff Vazquez $15.00 per hour.

95.     From approximately January 7, 2019 until on or about January 13, 2019, Defendants paid Plaintiff Vazquez a fixed salary of $550 per week.

96.     From approximately January 14, 2019 until on or about January 20, 2019, Defendants paid Plaintiff Vazquez $15.00 per hour.

97.     From approximately January 21, 2019 until on or about January 27, 2019, Defendants paid Plaintiff Vazquez a fixed salary of $780 per week.

98.     From approximately January 28, 2019 until on or about, 2020, Defendants paid Plaintiff Vazquez $15.00 per hour, but only for some of the hours he worked; in fact, defendants repeatedly paid Plaintiff Vazquez five hours less than what he had actually worked.

99.     For approximately one week in January 2020, Defendants did not pay Plaintiff Vazquez any wages for his work.

100.    Plaintiff Vazquez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

101.    For example, Defendants required Plaintiff Vazquez to work an additional 30 minutes past, his scheduled departure time every day, and did not pay him for the additional time he worked.

102.    Similarly, from approximately January 2019 until on or about January 2020, defendants did not pay Plaintiff Vazquez for at least 5 hours he had worked several weeks; he repeatedly complained to David Doe about this underpayment, and David Doe always told him he would take care of it but never did.

103.    Defendants never granted Plaintiff Vazquez any breaks or meal periods of any kind.

104.    Plaintiff Vazquez was never notified by Defendants that his tips were being included as an offset for wages.

105.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Vazquez's wages.

106.     Defendants withheld a portion of Plaintiff Vazquez's tips. Specifically, Defendants deducted a portion of all the tips customers paid through credit card and a percentage of Plaintiff Vazquez's delivery tips; in addition, since September 2019, defendants required Plaintiff Vazquez to share 50% of his tips with the sandwich makers and the counter workers.

107.     Plaintiff Vazquez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

108.     On a number of occasions, Defendants required Plaintiff Vazquez to sign a document, the contents of which he was not allowed to review in detail.

109.     Defendants took improper and illegal deductions from Plaintiff Vazquez's wages. Specifically, after 2019, 4 to 5 times throughout his employment, Defendants deducted 30 minutes from Plaintiff Vazquez's weekly wages for arriving 20 minutes late.

110.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Vazquez regarding overtime and wages under the FLSA and NYLL.

111.     Defendants did not provide Plaintiff Vazquez an accurate statement of wages, as required by NYLL 195(3).

112.     In fact, Defendants adjusted Plaintiff Vazquez's paystubs so that they reflected inaccurate wages and hours worked.

113.     Defendants did not give any notice to Plaintiff Vazquez, in English and in Spanish (Plaintiff Vazquez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

114.     Defendants required Plaintiff Vazquez to purchase "tools of the trade" with his own funds—including one bicycle, one helmet, one rain coat, lights for bicycle, and wheel repairs.

*Plaintiff Omar Espinobarros Vazquez*

115.    Plaintiff Espinobarros was employed by Defendants from approximately January 2019 until on or about January 30, 2020.

116.    Defendants employed Plaintiff Espinobarros as a food preparer and ostensibly as a delivery worker.

117.    Plaintiff Espinobarros regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

118.    Plaintiff Espinobarros's work duties required neither discretion nor independent judgment.

119.    From approximately Janurary 2019 until on or about July 2019, Plaintiff Espinobarros worked from approximately 2:00 p.m. until on or about 11:00 p.m., 7 days a week (typically 63 hours per week).

120.    From approximately August 2019 until on or about September 2019, Plaintiff Espinobarros worked from approximately 8:00 a.m. until on or about 3:30 p.m. to 4:30 p.m., Mondays and Wednesdays and from approximately 2:00 p.m. until on or about 10:00 p.m., Thursdays through Sundays (typically 47 to 49 hours per week).

121.    From approximately October 2019 until on or about December 2019, Plaintiff Espinobarros worked from approximately 8:00 a.m. until on or about 3:30 p.m., Mondays and Wednesdays and from approximately 3:00 p.m. until on or about 10:00 p.m., Thursdays through Sundays (typically 43 hours per week).

122.    From approximately December 2019 until on or about January 31, 2020, Plaintiff Espinobarros worked from approximately 3:00 p.m. until on or about 10:30 p.m., 5 days a week (typically 37.50 hours per week).

123.     Throughout his employment, Defendants paid Plaintiff Espinobarros his wages by check.

124.     From approximately January 2019 until on or about January 2020, Defendants paid Plaintiff Espinobarros $15.00 per hour.

125.     From approximately June 2019 until on or about January 2020, Defendants paid Plaintiff Espinobarros $15.00 per hour, but only for some of the hours he worked; in fact, defendants repeatedly paid Plaintiff Espinobarros five hours less than what he had actually worked.

126.     For approximately one week in January 2020, Defendants did not pay Plaintiff Espinobarros any wages for his work.

127.     Plaintiff Espinobarros's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

128.     For example, from approximately June 2019 until on or about January 2020, defendants did not pay Plaintiff Espinobarros for at least 5 hours he had worked those weeks.

129.     Defendants never granted Plaintiff Espinobarros any breaks or meal periods of any kind.

130.     Defendants withheld a portion of Plaintiff Espinobarros's tips. Specifically, Defendants withheld a portion of all the tips customers paid through credit card and Seamless and a percentage of delivery tips; in addition, since September 2019, defendants required Plaintiff Espinabarros to share 50% of his tips with the line cooks, sandwich makers and the counter workers.

131.     On a number of occasions, Defendants required Plaintiff Espinobarros to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

132.   No notification, either in the form of posted notices or other means, was ever given to Plaintiff Espinobarros regarding overtime and wages under the FLSA and NYLL.

133.   Defendants did not provide Plaintiff Espinobarros an accurate statement of wages, as required by NYLL 195(3).

134.   In fact, Defendants adjusted Plaintiff Espinobarros' paystubs so that they reflected inaccurate hours worked.

135.   Defendants did not give any notice to Plaintiff Espinobarros, in English and in Spanish (Plaintiff Espinobarros's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

136.   Defendants required Plaintiff Espinobarros to purchase "tools of the trade" with his own funds—including one electric bicycle and one lock.

*Plaintiff Raymundo Vazquez Angel*

137.   Plaintiff Angel was employed by Defendants from approximately August 12, 2017 until on or about March 16, 2020.

138.   Defendants employed Plaintiff Angel as a food preparer and ostensibly as a delivery worker.

139.   However, Plaintiff Angel was also required to spend a significant portion of his work day performing the non-tipped duties described above.

140.   Although Plaintiff Angel ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

141.   Plaintiff Angel regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

142.   Plaintiff Angel's work duties required neither discretion nor independent judgment.

143.    Throughout his employment with Defendants, Plaintiff Angel regularly worked in excess of 40 hours per week.

144.    From approximately August 12, 2017 until on or about November 2017, Plaintiff Angel worked from approximately 8:00 a.m. until on or about 10:00 p.m. to 10:30 p.m., 7 days a week (typically 98 to 101.50 hours per week).

145.    From approximately December 2017 until on or about July 2018, Plaintiff Angel worked from approximately 8:00 a.m. until on or about 4:30 p.m., 6 days a week (typically 51 hours per week).

146.    During the month of August 2018, Plaintiff Angel worked from approximately 8:00 a.m. until on or about 5:00 p.m., 6 days a week (typically 54 hours per week).

147.    From approximately September 2018 until on or about September 2019, Plaintiff Angel worked from approximately 8:00 a.m. until on or about 4:30 p.m., 6 days a week (typically 51 hours per week).

148.    From approximately October 2019 until on or about March 2020, Plaintiff Angel worked from approximately 8:00 a.m. until on or about 3:30 p.m., 3 days a week and from approximately 8:00 a.m. until on or about 4:00 p.m., 3 days a week (typically 46.50 hours per week).

149.    From approximately August 2017 until on or about December 2018, Defendants paid Plaintiff Angel his wages in cash.

150.    From approximately January 2019 until on or about March 2020, Defendants paid Plaintiff Angel his wages by check.

151.    From approximately August 2017 until on or about December 2018, Defendants paid Plaintiff Angel a fixed salary of $360 per week.

152.     From approximately January 2019 until on or about January 2020, Defendants paid Plaintiff Angel $15.00 per hour.

153.     From approximately February 03, 2020 until on or about March 06, 2020, Defendants paid Plaintiff Angel $20.00 per hour.

154.     From approximately March 7,2020 until on or about March 16, 2020, Defendants paid Plaintiff Angel a fixed salary of $600 per week.

155.     For approximately one week in March 2020, Defendants did not pay Plaintiff Angel any wages for his work.

156.     Plaintiff Angel's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

157.     For example, Defendants required Plaintiff Angel to work an additional 30 minutes to 1 hour past his scheduled departure time every day, and did not pay him for the additional time he worked.

158.     Defendants never granted Plaintiff Angel any breaks or meal periods of any kind.

159.     Defendants withheld a portion of Plaintiff Angel's tips. Specifically, Defendants withheld a portion of all the tips customers wrote in for Plaintiff Angel; in addition, since September 2019, defendants required Plaintiff Angel to share 50% of his tips with the sandwich makers, line cooks, managers and the counter workers.

160.     Plaintiff Angel was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

161.     On a number of occasions, Defendants required Plaintiff Angel to sign a document, the contents of which he was not allowed to review in detail.

162.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Angel regarding overtime and wages under the FLSA and NYLL.

163.    Defendants did not provide Plaintiff Angel an accurate statement of wages, as required by NYLL 195(3).

164.    In fact, Defendants adjusted Plaintiff Angel's paystubs so that they reflected inaccurate wages and hours worked.

165.    Defendants did not give any notice to Plaintiff Angel, in English and in Spanish (Plaintiff Angel's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

166.    Defendants required Plaintiff Angel to purchase "tools of the trade" with his own funds—including one bicycle, one helmet, one vest, one lock and shoes.

*Defendants' General Employment Practices*

167.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

168.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

169.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

170.     Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

171.     Defendants required Plaintiffs Caballero, Vazquez and angel and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

172.     Plaintiffs Caballero, Vazquez and angel and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

173.      These Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general deli work with duties, including the non-tipped duties described above.

174.     These Plaintiffs and all other tipped workers were paid at a rate that was lower than the lower tip-credit rate by Defendants.

175.     However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

176.     New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

177.     In violation of federal and state law as codified above, Defendants classified Plaintiffs Caballero, Vazquez and angel and other tipped workers as tipped employees, and paid them at a rate

that was lower than the lower tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

178.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

179.    Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

180.    Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received. Defendants' time keeping system did not reflect the actual hours that Plaintiff Caballero worked.

181.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

182.    Defendants unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

183.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit and pay them the full hourly minimum wage.

184.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

185.    On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail. Defendants paid Plaintiffs their wages in a combination of cash and check.

186.    Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

187.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

188.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

189.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

190.    Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

191.    Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary

language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

192.     Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

193.     At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

194.     The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

195.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

196.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

197.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

198.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

199.     Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

200.     Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

201.     Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

202.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

203.     Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

204.     Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

205.    Plaintiffs (and the FLSA Class members)were damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

206.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

207.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

208.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

209.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

210.    Plaintiffs were damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

211.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

212.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

213.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

214.     Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE SPREAD OF HOURS WAGE ORDER

## OF THE NEW YORK COMMISSIONER OF LABOR

215.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

216.     Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

217.     Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

218.     Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

219.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

220.     Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish, and Mixteco  (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business,

and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

221.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

222.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

223.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

224.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

225.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

226.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs,

further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

227.     Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

### OF THE NEW YORK LABOR LAW

228.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

229.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

230.     New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

231.     Defendants unlawfully misappropriated a portion of Plaintiffs' tips that were received from customers.

232.     Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

Plaintiffs were damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

### OF THE NEW YORK LABOR LAW

233.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

234.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of

the N.Y. Lab. Law §§ 2 and 651.

235.    Defendants made unlawful deductions from Plaintiffs' wages. Specifically, throughout 2019, defendants deducted at least 5 hours from Plaintiffs Vazquez and Espinobarrios's wages.  The deductions made from these Plaintiffs' wages were not authorized or required by law.

236.    Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

Plaintiffs were damaged in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION

## VIOLATION OF THE TIMELY PAYMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

237.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

238.    Defendants did not pay Plaintiffs  on a regular weekly basis, in violation of NYLL §191.

239.    Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)     Declaring that Defendants violated the timely payment provisions of the NYLL as

to Plaintiffs;

(l)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(m)     Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(n)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r)      Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)      All such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York

April 17, 2020

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:      /s/ Michael Faillace
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*
